MABEL Y. HOWE & another *vs.* SARAH RICHARDSON & another.

SARAH RICHARDSON & another *vs.* MABEL Y. HOWE & others.

Suffolk.   December 17, 1903. — June 24, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Executor.   Contract,* Implied.

Where executors under the will of a testator who had been conducting a mercantile and manufacturing business on borrowed capital, not being authorized by the will to carry on the business, but carrying it on by agreement of all parties interested for the purpose of preserving the business as a going concern, in good faith borrow money from the mother of one of the executors to use in the business, the son under authority from the other executors signing the note in the name under which the testator conducted the business, by himself "as executor", and the money is used in discharging debts of the business, and later the executors sell the business to a purchaser who agrees to assume and pay all

debts incurred by the executors in carrying on the business, the lender can maintain a suit in equity to recover the amount of the loan from the purchaser, the executors being liable for this indebtedness as money lent or money had and received, if they are not liable on the note.

BARKER, J. The general facts are these. John C. Howe died testate on September 25, 1901. Up to his death he had been carrying on business under the name of Howe and French. For some time this business had been conducted for him by Charles F. Richardson. Mabel Yates Howe, Walter Ashley Priest and Charles F. Richardson were duly made executors of the will. The will contained no provision for carrying on the business. The executors to preserve it as a going concern, in order that it might be disposed of or turned over to the beneficiaries under the will as a going concern, at the request of the beneficiaries under the will took possession of the business and carried it on under the name of Howe and French and the management of Charles F. Richardson until April 18, 1903. On or about that day Mabel Yates Howe and Marie Howe Yates bought the business of the executors, with the assent of the beneficiaries, subject to the liabilities of the business and agreeing to assume and pay all the debts incurred by the executors in conducting the business.

The testator in his lifetime had carried on the business upon borrowed capital. Charles F. Richardson in the lifetime of the testator had carried on the business as his manager and attorney having a salary as such and also a share of the profits. He continued to act as manager after the death of the testator without any new arrangement as to compensation.

At four different times after the testator's death Sarah Richardson, the mother of Charles F. Richardson, at his request made loans of money to Howe and French to be used in carrying on the business. The money lent was lent in good faith and was duly put into the funds of Howe and French and at once properly used in paying debts of the concern. The loans were of $3,000 on September 23, 1902, $3,000 on December 24, 1902, $3,000 on March 3, 1903, and $1,500 on April 10, 1903. Notes for each of these loans were signed " Howe & French by Charles F. Richardson, Executor," which notes are now held by Sarah Richardson.

Immediately after the sale of the business of Howe and French the purchasers, Mabel Yates Howe and Marie Howe Yates, terminated Charles F. Richardson's employment as manager of the business. Thereupon on May 26 the demand notes given for the four loans specified were put into bank for collection, presented at the office of Howe and French and refused payment, and then the first of the two bills in equity, sworn to on May 27, and filed on May 28, was brought by Mabel Yates Howe and Walter Ashley Priest, in the interest of Mabel Yates Howe and Marie Howe Yates against Charles F. Richardson and Sarah Richardson, asserting that the four loans had been made by the latter to the former for his individual use or account, that the four notes were not given to her for moneys lent by her to the executors carrying on business under the name of Howe and French, that no money had been lent by her to the executors, and that she had paid no consideration for the notes and was not a *bona fide* holder thereof for value, and praying for a preliminary injunction against her to restrain her from negotiating the notes or bringing suit upon them, and that she be ordered to deliver them up to be cancelled.

On June 4, 1903, Sarah Richardson and Charles F. Richardson filed the second bill in equity against Mabel Yates Howe, Walter Ashley Priest, who had declined to become a plaintiff in it, and Marie Howe Yates. This bill recites the circumstances of the death of John C. Howe, the proof of his will and the appointment of executors, their carrying on of the business under the name of Howe and French, the sale of that business to Mabel Yates Howe and Marie Howe Yates, the making of the four loans by Sarah Richardson to the executors for the use of the business and their use in that business of the money so lent, and the giving of the four demand notes, alleges that Mabel Yates Howe and Marie Howe Yates ought to pay out of the assets of Howe and French the debts created by the four loans and the notes, and that the assets of Howe and French transferred to them by the executors are chargeable with such payment, and prays that the notes be adjudged to be debts incurred by the executors in conducting the business of Howe and French and chargeable upon the assets of Howe and French received from the executors by Mabel Yates Howe and Marie Howe Yates, and that they may be ordered to pay them out of those assets.

Answers were filed to each bill, and on June 12, 1903, all the parties stipulated that the causes should be treated as one cause and be heard together, and that if it should be decided therein that the three executors were liable in any form on the notes or for the amount thereof to Sarah Richardson, a final decree might be entered ordering Mabel Yates Howe and Marie Howe Yates to pay to Sarah Richardson the amount found due upon said notes or obligation.

The cases were heard as one cause by Mr. Justice Morton, who filed a memorandum containing a statement of facts found by him, and a final decree was entered in these words : " These causes came on to be heard as one cause, by agreement of the parties, upon the merits, and were argued by counsel ; and there-upon, upon consideration thereof and of the agreement of the parties filed, it is hereby ordered, adjudged and decreed that Mabel Yates Howe and Marie Howe Yates pay to Sarah Richardson the sum of ten thousand eight hundred and two dollars and seventy cents ($10,802.70), being the amount of the loans by her to the executors of John C. Howe with inter-est to June 26, 1903," that being the date of the decree.

The evidence was taken under the Chancery Rule 35, and the report of the commissioner is part of the record, and the record states requests on the part of Mabel Yates Howe, Walter Ash-ley Priest and Marie Howe Yates for findings of facts and for rulings of law. The causes are before the full court upon their appeal from the decree of June 26, 1903.

The memorandum filed by Mr. Justice Morton containing his finding of facts and rulings of law is as follows :

" Memorandum of Decision.

" In these cases I find the following facts : —

" John C. Howe died testate on September 25, 1901, leaving a will which was duly proved and allowed, and of which Mabel Yates Howe, Walter Ashley Priest, and Charles F. Richardson were duly appointed executors. At the time of his death said Howe was carrying on a mercantile and manufacturing business, under the name of ' Howe & French.' The will gave the exec-utors no authority to carry on the business. But for the purpose of preserving the business as a going concern, it was understood and agreed by all parties interested that the executors should

continue to carry on the business under the name and style of
Howe & French, and they did so till April 18, 1903, when the
business, and the assets employed therein, were transferred by
the executors, with the consent and agreement of all parties
interested, to Mabel Yates Howe and Marie Howe Yates, subject
to the liabilities of the business, said Mabel Yates Howe and
Marie Howe Yates agreeing to assume and pay all the debts that
had been incurred by the executors in carrying on the business
of Howe & French. In order to facilitate carrying on the busi-
ness the other two executors gave to Richardson a power of
attorney, of which a copy is annexed to the defendant's answer
in *Richardson et al.* v. *Howe et al.* The business was carried on
by the testator in his lifetime largely with borrowed money, and
continued to be so carried on by the executors, money being bor-
rowed by them at different banks. At the time when the notes
which are the subject of these suits were given, the executors
had about reached the limit of their credit at the banks where
they were accustomed to borrow. To have attempted to borrow
more at those banks would have impaired their credit or the
credit of Howe & French. It became necessary to have more
money to carry on the business. Whereupon the said Charles
F. Richardson, acting under the authority given him by the
other executors, and for the benefit of all parties interested,
went to his mother, Sarah Richardson, one of the defendants
in one of these suits, and one of the plaintiffs in the other, and
obtained from her various sums, amounting in all to the sum of
$10,500, for which the notes of Howe & French, which are the
subjects of these suits, were given. This money was lent by
Mrs. Richardson to Howe & French, and I find that the exec-
utors were carrying on the business under that name and style,
and that the money that was borrowed went into the business
and was used to take up notes that had been given by Howe &
French and to pay acceptances by Howe & French that had
been given for merchandise used in the business. Mrs. Rich-
ardson left the details of the various transactions to her son, and
in making and procuring the loans he acted as the agent of his
mother as well as for and on behalf of Howe & French. There
is nothing to show that he did not act in entire good faith. The
money that was borrowed from Mrs. Richardson was entered on

the books of Howe & French to the credit of Charles F. Richardson, and he appears to have drawn against it from time to time. But I find that these entries were made by the bookkeepers as a matter of bookkeeping, without his knowledge or authority, and that there was and is an unsettled account for service between him and Howe & French which would explain, if necessary, the sums that he has drawn.

" On all the evidence I find and rule that the executors are personally liable for the sums lent by Mrs. Richardson to Howe & French, and that in accordance with the stipulation, a decree should be entered, ordering Mabel Yates Howe and Marie Howe Yates to pay to Sarah Richardson the amount due, namely, $10,500, with interest.

" I do not think that it is necessary to pass upon the question whether the executors are liable upon the notes. If they are not then I think that they are liable for money lent or money had and received.

" I give the rulings and make the findings requested so far as they are consistent with the rulings and findings made above. So far as they are inconsistent with them they are refused.

　　　　　　　　　　　" James M. Morton, J. S. J. C."

With reference to the findings of fact our examination of the commissioner's report of the evidence shows us that they were justified by the evidence, and we are of the opinion also that the record discloses no error of law.

The position of the appellants seems to have arisen from a difference of opinion as to the amount of compensation due to Charles F. Richardson as manager of the business of Howe and French from the time of the death of John C. Howe to that of the sale of the business by the executors, and to a misconception that the loans were made by Sarah Richardson to her son personally and not to the executors or to the business, which misconception very likely came from ignorance on the part of the appellants of the making of the loans and of the existence of the notes until after the sale of the business, and from the way in which the entries concerning the loans and the notes were made by the bookkeeper in charge of the books of Howe and French upon the books relating to that business.

The money lent by Sarah Richardson on September 23, 1902,

was passed from her to the borrower by means of her check to the order of Charles F. Richardson indorsed by him to the order of Howe and French, and the amount of the check was entered by the bookkeeper on the cash book, " Charles F. Richardson, loan account, Sarah Richardson, $3,000." There was on the books an account headed " Charles F. Richardson, Manager, account," to which such sums as he drew from the business of Howe and French for his personal use were charged. The first entry in this account was made October 31, 1901, and was a credit of $5,741.99, representing the amount found to be due him at the decease of John C. Howe as compensation to that time, taking into account salary and profits. Upon the ledger of Howe and French the $3,000 received from Sarah Richardson's check of September 23, 1902, was carried to the credit side of this account. The note of the same date intended to represent the debt was however made out at the same time and by the same bookkeeper, and ran to the order of Sarah Richardson. The check of December 23, 1902, by which Howe and French received the second loan, was drawn to the order of Howe and French, was carried to the credit of the same ledger account, and the note drawn by the bookkeeper to represent the loan was dated December 24, and ran to "the order of Chas. F. Richardson, % loan Sarah Richardson."

The checks of March 3, 1903, and of April 10, 1903, were each drawn to the order of Howe and French, and the corresponding notes were drawn payable to the order of Sarah Richardson, but in each case the sum represented by the check was carried to the same ledger account with the previous loans. For some reason no credits for the services or profits of Charles F. Richardson as manager were carried to this account between October 31, 1901, and the time when the business was sold, so that at that time the balancing of that account showed a net credit less than the sum of Sarah Richardson's loans. Sarah Richardson had not at that time asked for or received any interest on her loans. She had in fact never seen any of the notes, which were kept for her by Charles F. Richardson, her son, in a safety deposit box of his own in which he kept for his mother her securities, keeping his own in the same box. She never saw or had in manual possession in her own hands the notes until

-after the sale of the business of Howe and French to the present owners.

If the facts had been that Sarah Richardson had made the loans to her son upon his credit, and that in turn he had placed the money so acquired as his own to the credit of his own account as manager of the Howe and French business as a loan from himself and had drawn against the account as showing an indebtedness due to himself, and that after the sale he in bad faith had pretended that the loans were made not to himself but to the executors, and had then to work a fraud placed the notes in his mother's hands, the case would stand very differently. So in some degree it would stand differently if the loans having been intended by his mother as made to the executors, the son had in bad faith falsely pretended that they were made by him as an individual. In either of those cases it might be necessary to examine how far Sarah Richardson should be charged with his knowledge. So if the only ground for a liability on the part of the executors for debts incurred in prosecuting the business of Howe and French had been the written instrument of November 6, 1901, it might be necessary to inquire, under the doctrine of *Grafton National Bank* v. *Wing*, 172 Mass. 513, whether the executors were personally liable because of that instrument. But the findings of fact already recited, supported by the reported evidence, make all these considerations immaterial, and show that there was no error in the dealing of the justice who entered the decree, either with the requests for findings or for rulings. We assume that upon the performance of the decree the notes will be delivered up.

*Decree affirmed.*

*M. Storey & R. D. Weston-Smith,* for Mabel Y. Howe and others.

*J. H. Benton, Jr.,* (*W. L. Quimby* with him,) for Sarah Richardson.