### LIZZIE L. JAMES *vs.* J. B. LEWIS.

Suffolk.    January 24, 1905. — September 11, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Equity Pleading and Practice.    Equity Jurisdiction.*

On an appeal from a decree of the Superior Court dismissing a bill in equity, where all the evidence has been taken by a commissioner and is before the court and there are no rulings of the judge or special findings of fact, the decision will not be reversed unless there is no view of the evidence that properly could have been taken which would warrant the decree.

A woman, who having confidence in a dishonest person, then of good reputation, entrusts him with an assignment of a mortgage and a mortgage of her homestead executed by her for transfer and delivery, cannot maintain a suit in equity against a person who in good faith purchases one of the mortgages and takes and lends money on the other, to compel him to reassign the one mortgage and release the plaintiff's homestead from the other, on the ground that she has received no part of the consideration, especially if a part of the consideration has been received by her in the form of a check payable to the dishonest person, her authorized or apparently authorized agent to receive it.

BILL IN EQUITY, filed March 29, 1904, praying (1) that the defendant be enjoined from foreclosing a mortgage upon the plaintiff's homestead, and from collecting the principal and interest of another mortgage, both alleged to have been obtained from the plaintiff and delivered to the defendant through the fraud and forgery of one Edwin M. Thayer, the plaintiff receiving no consideration therefrom, (2) that the defendant be ordered to release and discharge the mortgage on the plaintiff's homestead, and to reassign the other mortgage to the plaintiff, and (3) for further relief.

In the Superior Court *Richardson*, J. appointed a commissioner under Chancery Rule 35 to take the evidence and report it to this court. The report of the commissioner being filed, the case was heard by the judge who made a decree that the bill be dismissed, with costs to the defendant. The plaintiff appealed.

*G. W. Anderson*, (*E. P. Fay* with him,) for the plaintiff.

*A. Hemenway*, (*A. E. Burr* with him,) for the defendant.

MORTON, J. This is a case growing out of the fraud and wrongdoing of one Edwin M. Thayer. It comes here on the plaintiff's appeal from a decree dismissing the bill with costs. The evidence was taken by a commissioner and is all before us. There were no rulings of law or special findings of fact, and the question for determination is whether it can be said as matter of law upon the whole case that there is no view of the evidence that properly could have been taken which warranted the decree. *Dickinson* v. *Todd*, 172 Mass. 183. *Evans* v. *Strachan-Hanscom*, 171 Mass. 64. This question resolves itself into two others: First. Is there any evidence warranting a finding that the signatures to the assignments and to the mortgage of the homestead are the plaintiff's genuine signatures, or does the evidence require a finding that they were forgeries? Secondly. If they are genuine, is there any evidence warranting a finding that what Thayer did was within his actual or apparent authority and that the defendant and those acting for him were justified in dealing with him as they did on one footing or the other, or does the evidence require a contrary finding as to each alternative?

The plaintiff is a widow living in Melrose. She had known Thayer six or seven years through her stepmother for whom he had done business, and testified that she had implicit confidence in him. Her first talk with him relative to business matters was in June, 1902, and her first business transaction with him was in the following September, when she let him have $1,000 which he was to invest for her. He subsequently told her that he had invested it and had made $700 on the investment. She believed this, and, so far as appears, allowed the whole amount to remain in his hands without any security therefor. Later, in response to a suggestion made by him that he thought he could invest her money better for her than it was invested, she told

him that she had a mortgage of $3,500 on a house in Melrose which she was willing he should get the money on and invest, and she took the mortgage in to him for that purpose. This was the Lynde mortgage, and she admitted that the signature to the assignment of it and the indorsement on the note were her genuine signatures. And although she testified that she did not notice that the mortgage was assigned to J. B. Lewis, Jr. (the defendant), she admitted that she understood that it was to be assigned to a gentleman who was about to make a tour round the world, which was the fact with regard to Mr. Lewis. After the assignment was executed and the note indorsed by her, she left the mortgage and the assignment and the note with Thayer, and there can be no question, we think, that a finding that Thayer had apparent authority to deliver them to the defendant and to deal with them as he did, and that the defendant was justified in relying upon such apparent authority and had no notice of anything fraudulent on Thayer's part, or of anything sufficient to put him upon inquiry was well warranted by the evidence.

Shortly after the plaintiff had taken the Lynde mortgage in to Thayer he sent her word by her son, who was employed in his office, that there was a flaw in the title, which was the fact, and which was subsequently rectified, and asked her to bring in her other mortgages, if she had any, and the deed of her house, and he would look them up and see if they were all right. Thereupon she took in the Gerrish mortgage and the deed of the house and left them with him. He told her that the Gerrish mortgage was all right, but that there was a slight defect in the title of some land that adjoined her house, which was true, and which was remedied, and said that she had better leave the papers with him and he would put them in his safe deposit vault where they would be safer than at her house, and she did so. The circumstances under which her signature to the assignment of the Gerrish mortgage and to the mortgage on her homestead were secured do not very clearly appear. She denied that she executed the mortgage upon the homestead or the assignment of the Gerrish mortgage, though she admitted that the signatures resembled her signature. But Mr. Bullard, the notary public who took her acknowledgment to the assignment of the

Lynde mortgage, testified that she signed both and that he took her acknowledgment to both. This without anything more would warrant a finding that her genuine signatures, though fraudulently obtained by Thayer, were attached to the mortgage of the homestead and to the assignment of the Gerrish mortgage. Thayer had, therefore, in his possession, or could have been found to have, the original Gerrish note and mortgage and an assignment thereof to the defendant duly executed, and also a mortgage from the plaintiff to the defendant on her homestead duly executed under circumstances of which, so far as the defendant was concerned, the only reasonable explanation was or at least could have been found to be, that he had the authority which he purported to have to act for the plaintiff. These facts alone, without anything to put the defendant upon inquiry, which could have been found to be the case, would seem to have warranted a finding that the defendant was justified in believing and in acting on the belief, that Thayer had authority to represent the plaintiff in the transaction, and to deliver the securities and to receive the sum which the defendant had agreed to lend. *Haines* v. *Pohlmann,* 10 C. E. Green, 179. *Williams* v. *Walker,* 2 Sandf. Ch. 325. But this was not all. In addition to the trust which the plaintiff admitted she reposed in Thayer, the defendant testified that, in reply to an expression of regret on his part in regard to the case, the plaintiff " said she was sorry, too, but it was only another case of a woman parting with her good mortgages for the sake of trying to get a large amount of income." She denied saying this, but whether she did or not was clearly for the judge to determine as well as the effect of it, if it was found that she did say it. There was also testimony tending to show that the defendant put the matter, after he had decided to make the loan ostensibly applied for by Thayer on behalf of the plaintiff, into the hands of the Massachusetts Title Insurance Company, of which Mr. Eugene O'Brien was counsel, to act for him; that Thayer took the Lynde and Gerrish mortgages in to Mr. O'Brien and he proceeded to examine the title; that subsequently the defendant and Thayer, and a young man said by Thayer to be a son of the plaintiff, met at Mr. O'Brien's office, and he called attention to a defect in the title of the Lynde mortgage, and that, after some talk between Thayer

and the defendant, the former said that the plaintiff would put in the homestead in order to get the money and the son would get the papers necessary for the examination of the title from his mother and bring them in to Mr. O'Brien, and did so. The son, who was identified at the trial by Mr. O'Brien, though not with absolute certainty, as the young man referred to, denied this. But here also the facts and their materiality were for the determination of the judge. Taking the whole case together we do not see how it fairly can be said that there was no evidence warranting the decree, or that it was clearly erroneous. See *Phelps* v. *Sullivan*, 140 Mass. 36; *Doyle* v. *Corey*, 170 Mass. 337; *Fitzgerald* v. *Beckwith*, 182 Mass. 177. This case is very different from *Westlake* v. *Dunn*, 184 Mass. 260, to which our attention has been called by counsel for the plaintiff since the argument. What Thayer did with the checks that were delivered to him by the defendant, and whether the plaintiff has any remedy against the defendant or the bank by reason of the forged indorsements or has a right to redeem, have nothing to do with the case before us and need not therefore be considered. The bill is not a bill to redeem, although so entitled, and there is no offer to redeem contained in it. It seeks to compel a release of the mortgage on the homestead and a reassignment of the other mortgages because of alleged fraud and forgery on Thayer's part, and because the plaintiff has received no part of the consideration. But in any event since it appears that a part of the consideration was received by the plaintiff in the form of a check payable to Thayer as her authorized or apparently authorized agent, she probably could not be relieved from the mortgages without redemption. The result is that the decree must be affirmed.

*So ordered.*